UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 07-23156-CIV-O'SULLIVAN
[CONSENT]

ROGER JIMENEZ, and all
others similarly situated under
29 U.S.C. § 216(b)

      Plaintiffs,

v.

SOUTHERN PARKING, INC.
WILLIAM KENT and JOSE
A. CONTRERAS,

      Defendants.

_____/

## ORDER

      THIS MATTER is before the Court pursuant to the Defendants' Motion for Summary Judgment (DE# 29, 7/25/08), Plaintiff's Motion for Partial Summary Judgment (DE# 31, 7/28/08) and Defendant's Motion for Sanctions (DE# 26, 7/21/08).  Having reviewed the applicable filings and the law, it is

      ORDERED AND ADJUDGED that Defendants' Motion for Summary Judgment (DE# 29, 7/25/08) is **GRANTED**.[1] It is further

      ORDERED AND ADJUDGED that for the reasons set forth below Plaintiff's Motion for Partial Summary Judgment (DE# 31, 7/28/08) is **DENIED as moot** and Defendant's Motion for Sanctions (DE# 26, 7/21/08) is **DENIED**.

---

      [1] The Court finds that as to the immigration issue, the defendants are not entitled to summary judgment as a matter of law.

## BACKGROUND

The plaintiff, Roger Jimenez (hereinafter "plaintiff"), filed the instant action against the defendants, Southern Parking, Inc. (hereinafter "SPI"), William Kent and Jose A. Contreras, for overtime violations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. See Complaint (DE# 1, 12/5/07).  The defendants contend that they did not employ the plaintiff. See Answer (DE# 14, 1/29/08); Answer (DE# 24, 4/9/08). Defendant Jose A. Contreras further argues that his car wash business was exempt from the FLSA because it generated insufficient revenue during the relevant time period. See Answer (DE# 24, 4/9/08). The parties stipulate that Southern Parking, Inc. (hereinafter "SPI") is an "employer" and William Kent is a "controlling agent" under the FLSA.[2]

## FACTS[3]

Defendant SPI provides valet parking services at multiple locations including the Williams Island Condominium (hereinafter "condominium") located at 6000 Island Boulevard, North Miami, Florida. Defendant William Kent is the president and sole owner of SPI. Mr. Kent retains operational control over SPI, has the authority to hire and fire employees and manages SPI's business on a day-to-day basis.

Individuals seeking a job with SPI would go to SPI's office on Dixie Highway in Hallandale, Florida. Job applicants would fill out applications and other paperwork,

---

[2] Since Mr. Kent's liability is intertwined with SPI's, the Court's references to SPI also include Mr. Kent.

[3] The facts of the case are set forth with a view toward the evidence and the factual inferences therefrom in the light most favorable to the non-moving party. Key West Harbour Dev. Corp. v. Key West, 987 F.2d 723, 726 (11th Cir. 1993).

provide a driver's license and social security card and submit to a  job interview at SPI's office. Once the applicant was hired, he or she would be fitted for a work uniform and provided work assignments. The plaintiff did not follow this procedure. The plaintiff never visited SPI's office, was not interviewed by SPI, did not fill out an application or provide a driver's license and social security card.

Defendant Jose Contreras was a valet manager employed by SPI and performed valet parking services at the condominium. Mr. Contreras supervised SPI's valet parking employees.  Mr. Contreras did not have any decision making authority over how much money the valets were paid. He did not have authority to hire or fire the valets.

The plaintiff came to Mr. Contreras looking for a job after a friend told him that "someone" was looking for a person to wash cars at the condominium. The friend provided the plaintiff with Mr. Contreras' contact information.  Mr. Contreras told the plaintiff that SPI provided car wash services to the condominium.[4]

Mr. Contreras hired the plaintiff. He established the plaintiff's work schedule.[5] Under their arrangement, Mr. Contreras would charge $15 per car washed. He would pay the plaintiff $8 per hour and keep the rest of the money. SPI did not receive income from the car wash business.

Mr. Contreras provided the plaintiff with a t-shirt bearing the name "Southern Parking, Inc." which the plaintiff had the option of wearing while washing cars at the

---

[4] The defendants dispute that SPI provided car wash services at the condominium. In ruling on the defendants' motion for summary judgment, the Court will assume that Mr. Contreras made this representation to the plaintiff.

[5] The defendants maintain that the plaintiff set his own hours and that he negotiated his rate with Mr. Contreras. This fact is disputed by the plaintiff.

condominium. Mr. Contreras supplied the materials the plaintiff needed for the car wash, such as soap, wax, a hose, sponges and cloths. The money to purchase these materials did not come from SPI.

The valet parking service and the car wash operated on the same site. The plaintiff washed approximately 60 to 65 cars per week. Almost all of the cars the plaintiff washed belonged to the residents of the condominium where SPI provided valet services. Approximately five cars per week did not belong to the condominium residents. The plaintiff washed most of the cars (between 30 and 35) on weekends, when Mr. Contreras was not at work. Generally, Mr. Contreras would leave the customer's car keys for the plaintiff in the valet office with a list of cars that needed to be washed. The plaintiff would retrieve the keys and washed the cars. When the plaintiff was done washing the cars, he would return the keys to the valet office. If a customer had a special request, such as removing a stain from the car, the customer would tell Mr. Contreras. Mr. Contreras would relay the customer's request to the plaintiff.

The plaintiff used the same punch card clock to record his time as the valets and the maintenance workers at the condominium.[6] Mr. Contreras used the punch card clock to keep track of the hours worked by the plaintiff and the valets. Mr. Contreras sent a written log of all SPI employees' hours to a payroll company, ADP. ADP would issue paychecks to SPI employees. The plaintiff's name was not listed on any of SPI or ADP's payroll records. The plaintiff was paid cash by Mr. Contreras for his work based

---

[6] The maintenance workers are not employed by SPI or Mr. Contreras.

on the hours recorded by the punch clock. On one or two occasions, Mr. Contreras paid

the plaintiff with a personal check. Gross revenue for the car wash did not exceed

$15,000 per year during the relevant time period.

## STANDARD OF REVIEW

### I.    Summary Judgment Standard

The Court, in reviewing a motion for summary judgment, is guided by the

standard set forth in Federal Rule of Civil Procedure 56(c), which states, in relevant

part, as follows:

> The judgment sought shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories and admissions on file, together
> with the affidavits, if any, show that there is no genuine issue as to any
> material fact and that the moving party is entitled to judgment as a matter
> of law.

The moving party bears the burden of meeting this exacting standard. Celotex Corp. v.

Catrett, 477 U.S. 317, 322-23 (1986).  That is, "[t]he moving party bears 'the initial

responsibility of informing the . . . [C]ourt of the basis for its motion, and identifying

those portions of the 'pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, which it believes demonstrate the

absence of a genuine issue of material fact.'" U.S. v. Four Parcels of Real Prop., 941

F.2d 1428, 1437 (11th Cir. 1991) (quoting Celotex, 477 U.S. at 323). In assessing

whether the moving party has satisfied this burden, the Court is required to view the

evidence and all factual inferences arising therefrom in the light most favorable to the

non-moving party. Batey v. Stone, 24 F.3d 1330, 1333 (11th Cir. 1994).  Summary

judgment is appropriate when there is no dispute as to any material fact and only

questions of law remain. Id. If the record presents factual issues, the Court must deny

the motion and proceed to trial. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

Despite these presumptions in favor of the non-moving party, the Court must be

mindful of the purpose of Rule 56 which is to eliminate the needless delay and expense

to the parties and to the Court occasioned by an unnecessary trial.  Celotex, 477 U.S.

at 322-23. Consequently, the non-moving party cannot merely rest upon his bare

assertions, conclusory allegations, surmises or conjectures. Id. As the Supreme Court

noted in Celotex:

> [T]he plain language of Rule 56(c) mandates the entry of summary
> judgment . . . against the party who fails to make a showing sufficient to
> establish the existence of an element essential to the party's case, and on
> which the party will bear the burden of proof at trial.  In such a situation,
> there can be "no genuine issue as to any material fact," since a complete
> failure of proof concerning an essential element of the non-moving party's
> case necessarily renders all other facts immaterial.

Id. at 322-323.  Thus, the mere existence of a scintilla of evidence in support of the

non-moving party's position is insufficient. There must be evidence on which the jury

could reasonably find for the non-movant.  Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 251 (1986).

## II.    Rule 11 Standard

Rule 11 allows a court to impose sanctions on an attorney, law firm, or party who

violates subsection (b) of the Rule. Fed. R. Civ. P. 11(c). Subsection (b) states as

follows:

> (b) Representations to the Court. By presenting to the court a pleading,
> written motion, or other paper--whether by signing, filing, submitting, or
> later advocating it--an attorney or unrepresented party certifies that to the
> best of the person's knowledge, information, and belief, formed after an

6

inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

With respect to Rule 11, the Eleventh Circuit has stated:

Rule 11 sanctions are proper (1) when a party filed a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) when the party files a pleading in bad faith for an improper purpose.

Jones v. International Riding Helmets, Ltd., 49 F.3d 692, 694 (11th Cir. 1995) (internal citations omitted). In essence, a court considering imposing Rule 11 sanctions must determine first whether the contents of the complaint are objectively frivolous and, if they are, whether the person who signed the pleading should have been aware that the pleading was frivolous. See id. at 695.

## III.   Section 1927 Standard

The defendants also seek sanctions pursuant to Section 1927, United States

Code, Title 28. Section 1927 states as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. In this Circuit, there are three essential requirements when imposing sanctions under section 1927. These requirements are: (1) the attorney must engage in "unreasonable and vexatious" conduct, (2) the conduct must "multipl[y] the proceedings" and (3) the amount of the sanction must directly relate to the excess proceedings. Briggs v. Briggs, 260 Fed. Appx. 164, 165 (11th Cir. 2007) (citing Amlong & Amlong, P.A. v. Denny's Inc., 457 F. 3d 1180, 1190 (11th Cir. 2006)).

## ANALYSIS

### I.  Defendants' Motion for Summary Judgment

On July 25, 2008, the defendants filed Defendants' Motion for Summary Judgment and Memorandum of Law (DE# 29) and Defendants' Statement of Undisputed Facts to Which There Is No Genuine Issue to Be Tried (DE# 30).  The plaintiff filed Plaintiff's Opposition to Defendants' Motion for Summary Judgment (DE# 33) and Plaintiff's Statement of Material Facts in Opposition to Defendants' Motion for Summary Judgment (DE# 34) on July 28, 2008. The defendants' reply was filed on August 7, 2008. See Defendants' Reply Memorandum in Support of Their Motion for Summary Judgment (DE# 37, 8/7/08).

The defendants seek final summary judgment against the plaintiff on the following grounds: (a) the plaintiff cannot recover under the FLSA as a matter of law

8

because he is not a legal resident of the United States, (b) the plaintiff was not employed in an enterprise affecting commerce, (c) SPI and the car wash were not joint employers of the plaintiff, (d) the car wash was not engaged in commerce and therefore was not an employer under the FLSA and (e) the plaintiff was an independent contractor.

**A.   The Plaintiff's Immigration Status Is Not Grounds for Summary Judgment under the FLSA**

The defendants argue that the plaintiff cannot recover under the FLSA because he never had a permit to work in the United States. See Defendants' Motion for Summary Judgment (DE# 29 at 3, 7/25/08). In Patel v. Quality Inn South, 846 F.2d 700 (11th Cir. 1988), the Eleventh Circuit held that undocumented aliens were protected under the FLSA. The Eleventh Circuit noted that "[n]othing in the FLSA suggests that undocumented aliens cannot recover unpaid minimum wages and overtime under the Act, and we can conceive of no other reason to adopt such a rule." Id. at 706. The defendants suggest that Patel would be decided differently today in light of the Supreme Court's subsequent interpretation of the Immigration Reform and Control Act ("IRCA") in Hoffman Plastic Compounds, Inc. v. N.L.R.B., 535 U.S. 137 (2002).

In Hoffman, the Supreme Court reversed an award of back pay by the National Labor Relations Board to an undocumented alien who had never been legally authorized to work in the United States. The Supreme Court held that "such relief [wa]s foreclosed by federal immigration policy, as expressed by Congress in the Immigration Reform and Control Act of 1986 (IRCA)." Id. at 1278.

Hoffman is distinguishable from Patel and the instant case. The issue in Hoffman

9

was the award of back pay to an illegal alien. "Back pay seeks to make an employee whole by awarding wages that would have been earned but for an unlawful firing." Martinez v. Mecca Farms, Inc., 213 F.R.D. 601, 604 (S.D. Fla. 2002). Here, the plaintiff seeks damages for work actually performed but not compensated at the overtime premium. As the Eleventh Circuit noted in Patel, "the rationale the Supreme Court used . . . to limit the availability of back pay under the [National Labor Relations Act] to periods when the employee was lawfully present in the United States is inapplicable. It would make little sense to consider [the plaintiff] 'unavailable' for work during a period of time when he was actually working." Patel, 846 F.2d at 706.

In Martinez v. Mecca Farms, Inc., 213 F.R.D. 601 (S.D. Fla. 2002), this Court addressed a similar issue. The plaintiffs in Martinez were undocumented agricultural workers who sought class certification of their claim that the defendants violated the Migrant and Seasonal Agricultural Worker Protection Act (AWPA). Id. at 603.  The defendants argued that the plaintiffs, as undocumented aliens, did not have standing because they could not recover under the AWPA based on the Supreme Court's decision in Hoffman. The Court discussed Hoffman but relied on the Eleventh Circuit's decision in Patel, noting that the "[d]efendant failed to make an important distinction between post-termination 'back pay' and other forms of remuneration." Id. at 604. "[T]he Circuit Courts that have addressed the issue have found that a distinction exists between back pay and compensated labor. In this case, as it is clear that the [p]laintiffs are bringing suit to challenge the compensation for work already performed, [the d]efendant's standing challenge fails." Id. at 605 (emphasis in original). The same rationale applies in the instant case.

10

The undersigned is bound by Patel which continues to be the law in this Circuit. Although the defendants cite to Hoffman, the Supreme Court in Hoffman did not overrule Patel. See United States v. Wilks, 464 F.3d 1240, 1243 (11th Cir. 2006) (noting that "[a]n intervening Supreme Court decision overrules [a circuit court] decision[] only if it is directly on point."). Based on established Eleventh Circuit precedent, the defendants are not entitled to summary judgment due to the plaintiff's purported illegal status in the United States.

**B.     FLSA Subject Matter Jurisdiction**

The FLSA's overtime provisions apply under two circumstances: (1) where an employee is engaged in commerce or the production of goods for commerce ("individual coverage") or (2) where an employee works for an "enterprise" engaged in commerce or in the production of goods for commerce ("enterprise coverage"). 29 U.S.C §§ 206(a), 207(a); see Ares v. Manuel Diaz Farms, Inc., 318 F.3d 1054, 1056 (11th Cir. 2003). "The burden of proof lies on employees to establish that they were engaged in interstate commerce, or in the production of goods, and that such production was for interstate commerce." Kitchings v. Florida United Methodist, 393 F.Supp.2d 1282, 1292 n. 25 (M.D. Fla. 2005) (citing D.A. Schulte, Inc. v. Gangi, 328 U.S. 108, 121 (1946); Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 90 (1942)).

The defendants argue that the Court does not have subject matter jurisdiction because the plaintiff cannot show that individual or enterprise coverage applies in the instant case. See Defendants' Motion for Summary Judgment (DE# 29 at 6-16, 7/25/08). The plaintiff counters that subject matter jurisdiction has been established

because the defendants have stipulated to FLSA jurisdiction as to SPI. See Plaintiff's Motion for Partial Summary Judgment (DE# 31 at 12, 7/28/08).[7]

Defendants SPI and Kent do not dispute that SPI and Kent (as a controlling agent of SPI) are "employers" under the FLSA. See Defendant's Response to Plaintiff's Statement of Material Facts in Support of Plaintiff's Motion for Summary Judgment (DE# 39 at 1, 8/8/08). However, the defendants argue that "neither SPI nor Kent have any connection to or control over or interest in the car wash where [the] [p]laintiff worked, and that the car wash in and of itself is not an employer within the meaning of the FLSA as it is not engaged in commerce and [the plaintiff] himself while he worked there was not engaged in commerce." Id.; see also Defendants' Motion for Summary Judgment and Memorandum of Law (DE# 29 at 6-10, 07/25/08). Thus, as a threshold matter, the Court must determine whether individual or enterprise coverage apply in the instant case.

###     i.     Individual Coverage

Individual coverage applies where the plaintiff is "engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a). "[F]or an employee to be "engaged in commerce" under the FLSA, he must be directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, e.g., transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his

---

[7] In responding to the defendants' arguments, the plaintiff refers to his own motion for partial summary judgment (DE# 31). See Plaintiff's Opposition to Defendants' Motion for Summary Judgment (DE# 33 at 2, 7/28/08).

work, e.g., regular and recurrent use of interstate telephone, telegraph, mails, or travel. Thorne v. All Restoration Services, Inc., 448 F.3d 1264, 1266 (11th Cir. 2006). It is undisputed that the plaintiff was not engaged in the production of goods for commerce while washing cars at the condominium. The issue is whether the plaintiff's was "engaged in commerce," as defined in 29 U.S.C. § 207(a)(1).

When determining individual coverage, the character of the employee's activities is determinative, not the nature of the employer's business. Overstreet v. N. Shore Corp., 318 U.S. 494, 498 (1943). The test, therefore, is "whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." Id. The application of this test to a FLSA claim is essentially a "line drawing exercise." Alonso v. Garcia, 147 Fed.Appx. 815, 816 (11th Cir. 2005) (citing Brennan v. Wilson Bldg., Inc., 478 F.2d 1090, 1094 (5th Cir. 1973)).[8]

In his complaint, the plaintiff alleges that "[b]oth the defendant's business and the [p]laintiff's work for the [d]efendant affected interstate commerce from the relevant time period. . . . [The] [p]laintiff's work for the [d]efendants affected interstate commerce . . . because the materials that he used or the cars he transported on a constant and/or continual basis and/or that were supplied to him by the [d]efendants to use on the job moved through interstate commerce prior to and/or subsequent to [the] [p]laintiff's use of the same." See Complaint (DE# 1 at ¶ 9, 12/5/07). Defendants argue that the

---

[8] Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding on this Court. Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc)

13

plaintiff's activities washing cars at the condominium did not affect commerce in a substantially sufficient fashion to bring the plaintiff within the coverage of the FLSA. See Defendants' Motion for Summary Judgment and Memorandum of Law (DE# 29 at 16, 07/25/08). The defendants argue that the plaintiff's work did not sufficiently affect commerce because the plaintiff washed vehicles using equipment purchased wholly within Florida and that the plaintiff did not drive the vehicles he washed except, on occasion, within the parking structure at the condominium.  Id. at 15.

The defendants rely on Lenca v. Laran Enters., Inc., 388 F.Supp. 782, 785 (N. D. Ill. 1974), to support their argument. Id. The Lenca court held that a residential or commercial janitor's work does not substantially affect interstate commerce. Lenca, 388 F.Supp. at 784. The court reasoned that the use of cleaning supplies, light bulbs, and plumbing repair parts that have moved in interstate commerce; the use of the telephone on out-of-state phone calls; and the delivery of tenants' mail did not have significant enough impact on interstate commerce. Id. at 785.  The court concluded that the FLSA did not apply to the janitors in that case. Id.

The plaintiff has not responded directly to the defendants' argument that the plaintiff's activities washing cars did not sufficiently affect interstate commerce so as to qualify for individual coverage under the FLSA. The plaintiff, however, cites the general proposition that Congress intended the FLSA to be construed liberally in favor of its intended beneficiaries and to apply to the furthest reaches consistent with congressional direction. See Plaintiff's Motion for Partial Summary Judgment (DE# 31 at 5, 07/28/08). The plaintiff also alleges that his work affected interstate commerce because the materials he used to wash cars and the cars he washed moved through

14

intestate commerce prior to and/or subsequent to the plaintiffs use thereof. <u>See</u> Complaint (DE# 1 at 2-3, 12/05/07).

The Eleventh Circuit has noted that the "engaged in commerce" language of the FLSA is to be given a broad, liberal construction. <u>Alonso v. Garcia</u>, 147 Fed.Appx. 815, 816 (11th Cir. 2005) (citing <u>Brennan v. Wilson Bldg., Inc.</u>, 478 F.2d 1090, 1094 (5th Cir. 1973)). However, Congress intended only to regulate activities constituting interstate commerce, not activities merely affecting commerce. <u>Thorne v. All Restoration Services, Inc.</u>, 448 F.3d 1264, 1266 (11th Cir. 2006) (citing <u>McLeod v. Threlkeld</u>, 319 U.S. 491, 497 (1943)); <u>see also</u> <u>Guzman v. Iradan, Inc.</u>, 551 F. Supp. 1369, 1371 (S.D. Fla. 2008). As the Eleventh Circuit has further explained:

> For an employee to be 'engaged in commerce' under the FLSA, he must be directly participating in the actual movement or persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, <u>e.g.</u> transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, <u>e.g.</u> regular and recurrent use of interstate telephone, telegraph, mails or travel.

<u>Id.</u> (citing 29 C.F.R. § 776.23(d)(2) (2005); 29 C.F.R. § 776.24 (2005); and referring to <u>McLeod</u>, 319 U.S. at 493-98, which held that plaintiff's activities were purely local and plaintiff was not "engaged in commerce" when plaintiff merely cooked and cleaned for railroad workers).

The undersigned is bound by the Eleventh Circuit's decision in <u>Thorne v. All Restoration Services, Inc.</u>, 448 F.3d 1264 (11th Cir. 2006). In <u>Thorne</u>, the Court held that "the mere purchase of goods that previously moved in interstate commerce for intrastate use" is insufficient to implicate interstate commerce. The Court reasoned that the plaintiff, who performed mold and water damage restoration work for residential and

15

commercial properties, was not covered by the FLSA just because in the course of his work he purchased tools that may have crossed state lines at some previous time. Id.; see also Guzman, 551 F. Supp. 2d at 1371 (interpreting Thorne as saying that the ultimate consumers of goods that have traveled in interstate commerce are not covered by the FLSA).

The Court finds that as a matter of law the plaintiff was not "engaged in interstate commerce" by washing cars at the condominium. The plaintiff has not countered the evidence proffered by the defendants that Mr. Contreras purchased all the materials for the car wash in Florida. Evidence that the plaintiff has used supplies and equipment that have once moved in interstate commerce is insufficient to qualify him for coverage. Ultimate consumers of products are not "engaged in commerce" just because they purchase products that have moved in interstate commerce.

There is no evidence that the plaintiff regularly used instrumentalities of interstate commerce like the telephone, mail, fax, internet, or transportation while washing cars at the condominium. The plaintiff also stated that almost all of the cars he washed were owned by residents of the condominium complex at which he worked, which further undermines the argument that he was "engaged in interstate commerce." See Plaintiff's Statement of Material Facts in Opposition to Defendant's Motion for Summary Judgment (DE# 34 at 3, 07/28/08).  No facts exist to counter the conclusion that the plaintiff's activities washing cars was purely local in nature. Thus, individual coverage does not apply, as a matter of law, in the instant case.

16

### ii.    Enterprise Coverage

Since individual coverage does not apply in the instant case, the plaintiff must establish enterprise coverage. The plaintiff argues that enterprise coverage exists because he was employed by the defendants (including SPI) and the parties have stipulated that SPI was a covered employer under the FLSA. Plaintiff's Motion for Summary Judgment (DE# 31, 7/28/08). The defendants argue that the car wash was completely independent from SPI and its valet parking business and therefore, there was no "enterprise." Defendants' Motion for Summary Judgment (DE# 29 at 6-10, 7/25/08). "The valet parking operation is solely owned and operated by SPI and [Mr.] Kent, while the car wash service is owned and operated by [Mr.] Contreras separate and apart from his duties as a valet manager with SPI." Id. at 8. The plaintiff has proffered no evidence that the car wash, by itself, constitutes a covered entity under the FLSA. Gross revenue for the car wash did not exceed $15,000 per year. See Unsworn Declaration of Jose Contreras at ¶ 4, Defendants' Statement of Undisputed Facts as to Which There Is No Genuine Issue of to Be Tried (DE# 30, 7/25/08). Thus, in order for the plaintiff to establish enterprise coverage, he must show that (1)  the car wash and SPI were a single enterprise or (2) the car wash and SPI were joint employers of the plaintiff.  The Court will address each argument in turn.

### a.    Whether SPI and the Car Wash Were a Single Enterprise

The FLSA defines the term "enterprise" as "related activities (either through unified operation or common control) by any person or persons for a common business purpose." 29 U.S.C. § 203(r)(1). The three primary elements of the statutory definition

of "enterprise" are: (1) related activities, (2) unified operation or common control and (3) common business purpose. Brennan v. Arnheim & Neely, Inc., 410 U.S. 511, 517 (1973); Donovan v. Easton Land & Dev., Inc., 723 F.2d 1549, 1551 (11th Cir. 1984).  All three elements must be satisfied for an "enterprise" to exist. Donovan, 723 F.2d at 1551 (citing Dunlop v. Ashy, 555 F.2d 1228, 1231 (5th Cir. 1977)).

### (1).    Related Activities

The first prong in determining whether a single enterprise exists is whether the activities of SPI and the car wash are related. "Activities are related when they are 'the same or similar' or when they are 'auxiliary and service activities.' Donovan, 723 F.2d at 1551 (citing S.Rep. No. 145, 87th Cong., 1st Sess. 31, reprinted in 1961 U.S.Code Cong. & Ad.News 1620, 1660). Providing valet parking and car wash services are not the "same" or "similar" under the facts of this case. See Id. (finding that providing food and bar services and providing overnight accommodations were not the same or similar with respect to a hotel and a restaurant). Thus, the plaintiff must show that the activities of SPI and the car wash are "auxiliary and service activities."

"Auxiliary and service activities" have been defined as activities involving "operational interdependence in fact." Donovan, 723 F.2d at 1551(citing Brennan, 482 F.2d at 1367). Relatedness through auxiliary and service activities may be proven where the corporations share centralized office functions (such as book keeping, auditing, billing, purchasing advertising, centralized warehousing of materials) or regularly share employees. Brennan v. Veterans Cleaning Service, Inc., 482 F. 2d 1362, 1366-1367 (5th Cir. 1973).

The defendants argue that the activities of the car wash and the valet parking business are unrelated:

> [W]hile parking cars and washing them may be convenient luxuries to the residents and guests of the [condominium], they are operationally independent. The valet parking operation is solely owned and operated by SPI and [Mr.] Kent, while the car wash service is owned and operated by [Mr.] Contreras separate and apart from his duties as a valet manager with SPI.

Defendants' Motion for Summary Judgment (DE# 29 at 8, 7/25/08). The defendants point out that some of the cars washed by the plaintiff (approximately five[9] out of 60 or 65 cars washed per week) did not belong to the residents of the condominium. Id.; Plaintiff's Statement of Material Facts in Opposition to Defendants' Motion for Summary Judgment (DE# 34 at 3, 7/28/08). The plaintiff does not directly address the three prong test for determining whether a single enterprise exists. The plaintiff does argue that "[he] was completely economically dependent on [SPI's] valet business as his very job existed to supplement the [d]efendants' valet business for [d]efendants' clients' benefit." Plaintiff's Motion for Partial Summary Judgment (DE# 31 at 6, 7/28/08).

Here, there is no record evidence that SPI and the car wash shared centralized office functions. To the contrary, SPI utilized a payroll company while the plaintiff was paid, for the most part, in cash by Mr. Contreras. There is no evidence that the valets[10] also washed cars or that the plaintiff sometimes worked as a valet.  There is some evidence that the car wash existed to serve the needs and convenience of the

---

[9] The record does not disclose whether those five cars belonged to guests visiting the condominium or the general population.

[10] It is undisputed that Mr. Contreras, the valet manager, washed cars at times to assist the plaintiff.

condominium residents who used the valet parking services. Although presumably anyone could have used the car wash, the vast majority of the car wash customers were also customers of the valet parking business. Thus, SPI and the car wash shared the same clientele. Customers who wished to have their cars washed left their keys and any special instructions with Mr. Contreras or the valets at the valet office at the condominium. Thus, the Court finds that at best there is an issue of material fact concerning whether the valet parking business and the car wash service were related activities.

### (2).    Unified Operation or Common Control

The next factor to consider is whether there was unified operation or common control. The term, "unified operations" has been defined by the Department of Labor as follows:

> Since the term "unified operation" has reference to the method of performing the related activities, it means combining, uniting, or organizing their performance so that they are in effect a single business unit or an organized business system which is an economic unit directed to the accomplishment of a common business purpose. The term "unified operation" thus includes a business which may consist of separate segments but which is conducted or operated as a unit or as a single business for a common business purpose.

Dunlop v. Ashy, 555 F. 2d 1228, 1234 (5th Cir. 1977) (citing 29 C.F.R. § 779.217).

Here, the customers seeking to have their cars washed left their keys and any special instructions with the valet office. The plaintiff picked up the keys at the valet office and any special instructions were relayed to the plaintiff there. However, "[t]o be considered a 'unified operation' within the meaning of 29 U.S.C. § 203(r), the record must evidence more than close cooperation and mutual assistance." Dunlop v. Ashy,

20

555 F. 2d 1228, 1234 (5th Cir. 1977). SPI did not receive any income from the operation of the car wash and did not provide Mr. Contreras with the funds to purchase materials for the car wash. Other than Mr. Contreras, no employees were interchanged between the valet business and the car wash. The payroll records of SPI were kept separate from the car wash business. ADP processed payroll for SPI employees. Mr. Contreras kept track of the hours the plaintiff worked and paid him in cash. Thus, there was no unified operation between the valet business and the car wash in the instant case.

Although there is no unified operation, related activities may still be an "enterprise" if common control is exerted over them. Donovan, 723 F. 2d at 1552. At the outset, the Court notes that there is no common ownership between SPI and the car wash. "A controlling ownership interest in a business, though not a prerequisite for 'common control' establishes that the power of control exists." Donovan, 723 F. 2d at 1552 (citation omitted). Here, Mr. Contreras has no ownership interest in SPI. Mr. Kent was the sole owner of SPI. There is no evidence that Mr. Kent had an ownership interest in the car wash. Mr. Kent did not provide funds to the car wash, did not receive revenue from the car wash and did not share in any losses.

"[T]he test of common control is . . . whether there is a common control center with the ultimate power to make binding policy decisions for all units of the enterprise." Dunlop, 555 F. 2d at 1231. The defendants argue that Mr. Contreras controlled the car wash and SPI controlled the valet parking business. "[Mr.] Contreras engaged [the plaintiff] to wash cars and was responsible for paying him, while SPI hired and paid the valets on separate books and out of separate accounts." Defendants' Motion for

21

Summary Judgment (DE# 29 at 9, 7/25/08). According to the defendants, Mr. Contreras had no control over SPI and SPI had no control over the car wash. Id.

The undisputed facts show that Mr. Kent had operational control over SPI and managed SPI's business on a day-to-day basis. There is no evidence that Mr. Contreras had any control over the operations of SPI. The plaintiff has not presented evidence that Mr. Kent exercised operational control or managed the car wash. Thus, the plaintiff has not satisfied the unified operation or common control prong.

### (3).    Common Business Purpose

The third factor is a common business purpose. "More than a common goal to make a profit . . . must be shown to satisfy this requirement." Donovan, 723 F. 2d at 1553. The defendants argue that the car wash and the valet parking business were separate entities trying to achieve separate incomes and separate profits. Defendants' Motion for Summary Judgment (DE# 29 at 10, 7/25/08). The Court finds that the plaintiff has not shown that the car wash and SPI shared a common business purpose. As noted above, SPI did not receive any revenue from the car wash service and there is no evidence that the SPI provided funds to the car wash. See Donovan, 723 F. 2d at 1553 (noting that district court was correct in finding no common business purpose where there was no intermingling of profits between two entities).

Having carefully considered the above factors, the undersigned finds that the plaintiff has not met two out of the three requirements for establishing that SPI and the car wash were a single enterprise. As such, the Court must next determine whether the car wash and SPI were joint employers of the plaintiff.

### iii.   Whether SPI and the Car Wash were Joint Employers of the Plaintiff

The defendants argue that SPI and defendant Contreras were not joint employers of the plaintiff. <u>See</u> Defendants' Motion for Summary Judgment (DE# 29 at 11-12, 7/25/08).  A joint employment relationship exists "where a single individual stands in the relation of an employee to two or more persons at the same time." <u>Gonzalez-Sanchez v. International Paper Company</u>, 346 F. 3d 1017, 1020 (11th Cir. 2003); 29 C.F.R. § 791.2 (defining "joint employment" under the FLSA). Under the FLSA, "a worker can be economically dependent on, and thus jointly employed by more than one entity at the same time." <u>Id.</u> at 1021 (citing <u>Antenor</u>, 88 F. 3d at 929).

The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  FLSA is a remedial statute therefore it must be construed broadly. <u>Antenor</u>, 88 F.3d at 932-33. The "economic realities" of the individual case determine whether an employment relationship exists under the FLSA. <u>Id.</u> at 929-31. The following factors are to be considered when determining if a joint employment relationship exists in a given circumstance:

(1)     the nature and degree of the putative employer's control over the workers;

(2)      the degree of supervision, direct or indirect of the work;

(3)      the right, directly or indirectly, to hire, fire, or modify the worker's employment conditions;

(4)     the power to determine the worker's pay rates or methods of payment;

(5)     the preparation of payroll and payment of worker's wages;

(6)     ownership of the facilities where the work occurred;

(7)     whether the worker performed a line job integral to the end product; and

(8)      the relative investment in equipment and facilities.

Antenor, 88 F.3d at 932.

In applying these factors, the Eleventh Circuit has provided some guidelines. The question in "joint employment" cases is not whether the worker is more economically dependent on one putative employer or another because more than one entity can be a putative employer. No one factor is determinative because the existence of a joint employment relationship depends on the economic reality of all the circumstances. The weight of each factor depends on the light it sheds on the worker's economic dependence. The absence of evidence on any one or more of the factors does not preclude a finding that a putative employer was a joint employer. In considering a joint-employment relationship, the Court should look to the economic reality of all the circumstances concerning whether the putative employee is economically dependent upon the alleged employer instead of the common law employment definition. Since the FLSA is a remedial statute, the Court must construe it broadly. Antenor, 88 F.3d at 932-33.

The first indicator of joint employment status is the nature and degree of the putative employer's control over the workers. In Antenor, the Eleventh Circuit stated "[s]uch control arises when [the alleged employer] determines for example, the number of workers hired for a job, when work should begin on a particular day, which workers

24

should be assigned to specific tasks and whether a worker should be disciplined or retained." Id. at 933. The defendants argue that there is no record evidence indicating that SPI maintained any control, either direct or indirect, over the plaintiff's work. Defendants' Motion for Summary Judgment (DE# 29 at 12, 7/25/08). The Court agrees. The plaintiff testified at deposition that Mr. Contreras hired him and set his schedule. There is no evidence concerning whether Mr. Contreras had the authority to fire the plaintiff but it is clear that Mr. Contreras did not have the authority to hire or fire the valets who worked for SPI.

The next factor to consider is the degree of supervision, direct or indirect of the work. The plaintiff argues that Mr. Contreras was his supervisor. There is no record evidence that Mr. Contreras instructed the plaintiff on how to wash the cars or that Mr. Contreras would have corrected the plaintiff in the event that a car was not properly washed. The defendants point out that assuming Mr. Contreras was the plaintiff's supervisor "[t]he only connection which SPI had with [the plaintiff] is the fact that it employed [Mr.] Contreras as a valet manager, and [Mr.] Contreras engaged [the plaintiff] to wash cars at the same building where [Mr.] Contreras acted as a valet manager for SPI." Defendants' Motion for Summary Judgment (DE# 29 at 12, 7/25/08). There is no evidence that SPI exercised any degree of supervision, direct or indirect, over the plaintiff's work.

The third factor concerns the right, directly or indirectly, to hire, fire, or modify the worker's employment conditions. The plaintiff was hired by Mr. Contreras to wash cars. He did not fill out an application with SPI or present the proper documentation to SPI's human resources. The record shows that Mr. Contreras did not have the authority to

25

hire or fire the valets employed by SPI. There is no evidence that SPI had the right, directly or indirectly, to hire, fire, or modify the plaintiff's employment conditions.

The fourth factor this Court must consider is the degree to which the alleged employer had the power to determine the pay rates or methods of payment of the plaintiff. "Method of payment refers to the basis upon which a worker is paid, for example, by the hour or by the piece." Antenor, 88 F.3d at 936. Here, Mr. Contreras set the plaintiff's compensation at $8.00 per hour. The undisputed evidence is that Mr. Contreras did not have the authority to set the pay rates of the valets employed by SPI. In fact, Mr. Contreras did not know how much the valets were paid. Thus, there is no record evidence that SPI set the plaintiff's pay rate.

The fifth factor is the preparation of payroll and payment of worker's wages. "This factor is probative of joint employment because of the likelihood that when a business undertakes to help an independent contractor prepare its payroll and pay its wages, it is likely that the contractor lacks economic substance on which the workers can solely depend." Antenor, 88 F.3d at 936. There is no evidence that the plaintiff was paid by SPI. It is undisputed that SPI's payroll was prepared by a payroll company, ADP. The plaintiff's name was not on any of ADP or SPI's payroll records. The valets employed by SPI were paid by check. The plaintiff was paid directly by Mr. Contreras, and for the most part, the plaintiff was paid in cash.

The sixth factor concerns the ownership of the facilities where the work occurred. "This element is probative of joint-employment status for the obvious reason that without the land, the worker might not have work, and because a business that owns or

controls the worksite will likely be able to prevent labor law violations, even if it delegates hiring and supervisory responsibilities to contractors." <u>Antenor</u>, 88 F.3d at 936-37. The defendants do not own the condominium where the plaintiff washed cars. The plaintiff does not dispute this. Therefore, this Court must conclude that there is no evidence under this factor tending to prove joint employment.

The seventh factor this Court must consider is whether the worker performed a line job integral to the end product. This factor is probative of joint employment because a worker who performs a routine task that is integral to the putative employer's business is likely to be dependent on the defendant's overall enterprises. The plaintiff testified that Mr. Contreras told him that SPI provided both valet and car wash services at the condominium. For summary judgment purposes, the Court must accept the plaintiff's testimony as true. Nonetheless, the economic realities test requires this Court to consider the relationship in practice to determine if an entity in fact functioned as a joint employer. There are no facts supporting the statement that SPI provide car wash services at the condominium. There is no evidence that SPI funded the car wash or paid for the plaintiff's salary. Mr. Contreras paid the plaintiff from the proceeds of the car wash. Mr. Contreras bought the materials for the car wash using his own money. There is no evidence that SPI advertised car washing services at the condominium. There is no record evidence that the car wash service was an integral part of SPI's valet business.

The last factor is  the relative investment in equipment and facilities. This factor is probative because it is more likely that a worker is economically dependent on the entity that supplies the equipment or the facilities necessary to perform the work in

27

question. In the instant case, Mr. Contreras provided the plaintiff with the materials he needed to wash the cars. The materials were not purchased with SPI's money. The car wash was located at the condominium. SPI and Mr. Kent were did not own any part of the condominium and were not part of the condominium board.

The Court finds that under the economic realities test, SPI and the car wash were not joint employers of the plaintiff.  Because the plaintiff cannot show that either individual or enterprise coverage exists, the defendants are entitled to final summary judgment on the plaintiff's claims.

## II.     Plaintiff's Motion for Partial Summary Judgment

The plaintiff seeks partial summary judgment on the ground that the plaintiff was an employee of the defendants and not an independent contractor as a matter of law. For the reasons previously stated, the Court finds that the defendants are entitled to summary judgment because the plaintiff cannot show individual or enterprise coverage. As such, Plaintiff's Motion for Partial Summary Judgment (DE# 31 at 6, 7/28/08) is **DENIED as moot**.

## III.    Defendants' Motion for Sanctions

The defendants filed their motion for sanctions on July 21, 2008. <u>See</u> Defendant's Motion for Sanctions (DE# 26, 7/21/08). The plaintiff filed his response on July 28, 2008. <u>See</u> Plaintiff's Response to Defendants' Motion for Sanctions (DE# 35, 7/28/08). According to the defendants, the plaintiff should be sanctioned pursuant to Section 1927, United States Code, Title 28 and Rule 11, Federal Rules of Civil Procedure, because (1) defendants SPI and William Kent were not the plaintiff's

employers and (2) defendant Contreras' car wash business did not generate sufficient revenue to trigger the FLSA.

There is no basis for granting the defendants' motion for sanctions. The contents of the plaintiff's complaint are not objectively frivolous. Similarly, there is no evidence that that the plaintiff's counsel unreasonably and vexatiously multiplied the proceedings in the instant case as required under 28 U.S.C. § 1927. As such, Defendant's Motion for Sanctions (DE# 26, 7/21/08) is **DENIED**.

<u>**CONCLUSION**</u>

Based on all of the foregoing, the Court finds that the defendants are entitled to final summary judgment because the plaintiff cannot show that either individual coverage or enterprise coverage apply in this case.

DONE AND ORDERED in Chambers at Miami, Florida this **16th** day of September, 2008.

JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies to:

All counsel of record